IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., AN ILLINOIS NOT-FOR-PROFIT CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company, WINNING CHARITIES INC., a Canadian federal corporation; CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company, and WILLIAM BAYLES, | ) ) ) ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation ("Ronald McDonald House"), by and through its undersigned counsel, for its Complaint for Damages and Other Relief against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company ("WCI-Illinois"); WINNING CHARITIES INC., a Canadian federal corporation ("WCI-Canada"); CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company ("WCI-Assurance"); and, WILLIAM BAYLES ("Bayles") (collectively, "Defendants"), alleges as follows:

**SUMMARY OF RONALD MCDONALD'S CLAIMS**

1.   Defendants hold themselves out as reputable providers of fundraising services to charities. WCI-Illinois' relationship with Ronald McDonald House, however, resulted in a

multi-million dollar loss to Ronald McDonald House. Ronald McDonald House is a well-known charity that provides critical services to families in need.

2. This is an action to enforce a contract that was struck by the Parties at a meeting on November 20, 2012. The agreement was documented in an email between the Parties and in a draft of the agreement, including one prepared by the Defendants themselves. Then, by Defendants' own admission, they unilaterally "backed out" of the agreement without justification.

## PARTIES AND SUBJECT MATTER JURISDICTION

3. Ronald McDonald House is a not-for-profit corporation that was incorporated under the laws of the State of Illinois. Ronald McDonald House's principal place of business is in Oak Brook, Illinois. Ronald McDonald House is an Internal Revenue Code Section 501(c)(3) organization whose mission is to care for families of children with complex medical needs by providing comfort, compassion and community. Ronald McDonald House keeps families of hospitalized children together in a "home away from home."

4. WCI-Illinois is a limited liability company that was organized under the laws of the State of Delaware. WCI-Illinois' members are William Bayles and Karen Bayles, who are both citizens of Canada and who are not citizens of Illinois. WCI-Illinois' principal place of business is in Brockville, Ontario, Canada.

5. WCI-Canada is a corporation incorporated under the laws of Canada and not Illinois. WCI-Canada's principal place of business is in Brockville, Ontario, Canada. WCI Canada does business as Winning Charities International, and owns a trademark in the same name.

6. WCI-Assurance is a limited liability company that was organized under the laws of the State of Delaware. Upon information and belief, WCI-Assurance's members are William Bayles and Karen Bayles, who are both citizens of Canada and who are not citizens of Illinois. WCI-Assurance's principal place of business is in Brockville, Ontario, Canada.

7. Bayles is an individual who is a citizen and resident of Ontario, Canada.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as no defendant is a citizen of the state of which Plaintiff is a citizen (Illinois), and the amount in controversy exceeds $75,000, exclusive of costs and interest.

9. Venue in this District is proper because a transaction at issue in this case is a contract that was negotiated and agreed upon in Rosemont, Illinois and Chicago, Illinois.

## PERSONAL JURISDICTION

10. This Court has personal jurisdiction over WCI-Illinois pursuant to 735 ILCS 5/2-209(a)(1) as WCI-Illinois transacts and does business in the State of Illinois.

11. This Court has personal jurisdiction over all Defendants except Bayles pursuant to 735 ILCS 5/-209(a)(7) as those Defendants are parties to the contract at issue in this lawsuit, which is substantially connected to the State of Illinois. This Court also has personal jurisdiction over all Defendants pursuant to 735 ILCS 5/2-209(a)(2) as Defendants committed tortious acts within the State of Illinois.

12. This Court also has personal jurisdiction over all Defendants except Bayles pursuant to the choice-of-law and forum-selection provisions of the relevant agreement.

13. Alternatively, this Court has personal jurisdiction over Defendants WCI-Canada and WCI-Assurance as WCI-Illinois served as their agent and affiliate. Further, this Court has

personal jurisdiction over Bayles since he acted as the corporate Defendants' agent at relevant times.

## THE AGREEMENT

14. Previously, in August, 2011 and February, 2012, WCI-Illinois and Ronald McDonald House entered into contracts ("Previous Agreements") through which WCI-Illinois was to raise funds for Ronald McDonald House through what Defendants call a "media intense charity raffle" (the "Raffle").

15. Over the course of 2011 and 2012, Ronald McDonald House fronted its funds for the Raffle, overseen by WCI-Illinois and likely the other Defendants.

16. The Raffle was an utter and complete failure, resulting in a loss of approximately $2,800,000 to Ronald McDonald House.

17. The Parties were in dispute as to the Raffle and Ronald McDonald House initiated an arbitration proceeding against WCI-Illinois pursuant to the Previous Agreements (the "Arbitration"). On November 20, 2012, the Parties met in Rosemont, Illinois to discuss settlement of their dispute (the "November 20 Meeting"). Ronald McDonald House had claims not only against WCI-Illinois, but also against the other Defendants based on alter-ego and other theories of liability. Ronald McDonald House made these claims known to Defendants, both at the November 20 Meeting and at other times.

18. Defendants were represented at the November 20 Meeting by Defendants' principal, Bayles, and by two attorneys. Ronald McDonald House was represented at the November 20 Meeting by its chief executive officer, its general counsel and one outside counsel.

19. The Parties came to an agreement at the November 20 Meeting (the "Contract"). The general terms of the Contract are: (a) Defendants are to pay $1,100,000 to Ronald

McDonald House (the "$1.1 Million Payment") (through installments); (b) Defendants were to post specified security (an arbitration award in the amount of $1,100,000; a lien on all Defendants' assets, subordinate only to one lender; and any other reasonable security short of a personal guaranty by Bayles); and (c) Defendants were to provide certified financial statements and representations and warranties regarding litigation to Ronald McDonald House.

20. The Contract could be performed within one year. For example, in the event the Defendants missed an installment on a $1.1 Million Payment, the whole amount was to be accelerated in the form of an arbitration award in the amount of $1,100,000, less any installments made.

21. The Contract was initially documented in a November 21, 2012 email sent by Ronald McDonald House's counsel and confirmed by one of Defendants' counsel ("November 21 Email"). A true and correct copy of the November 21 Email is attached hereto and incorporated herein as Exhibit "A." To the extent necessary, Defense counsel's electronic mail confirming the Contract constitutes a signature and Defendants' assent to the Contract, and Defense counsel was acting as Defendants' agent within the scope of his authority when he sent his email confirming the Contract. Defendants otherwise indicated their intent to be bound by the Contract.

22. Thereafter, the Parties exchanged drafts of a more formal agreement to further document the Contract ("Formal Agreement"). For example, on December 27, 2012, Defendants' counsel sent his draft of the Formal Agreement to Ronald McDonald House's counsel, constituting partial performance of the Contract. The Formal Agreement contained a release of WCI-Canada and WCI-Assurance (in addition to WCI-Illinois), protecting those companies from Ronald McDonald House's alter-ego and other claims against them.

23. On December 31, 2012, Defendants' counsel initiated a call to Ronald McDonald House's counsel wherein defense counsel advised that Defendants were unilaterally backing out of the Contract, without legal justification ("December 31 Call"). Indeed, one of Defendants' counsel advised during the December 31 Call that there is "no doubt we had a deal," or similar words to that effect.

24. Thereafter, the Defendants failed and refused to adhere to the Contract, advising further through counsel that they repudiated the Contract. The first two installments of the $1.1 Million Payment were due on January 4, 2013 and February 15, 2013 respectively, and Defendants have paid neither installment to Ronald McDonald House (in addition to advising that they would not do so).

## THE FRAUD

25. Defendants made several false statements of material fact at the November 20 Meeting (collectively, the "Misrepresentations"). Bayles, on behalf of Defendants, falsely stated that the Defendants had the intent to adhere to the terms of the Contract, even shaking hands with representatives of Ronald McDonald House at the conclusion of the meeting as a sign of the accord reached at the meeting. Bayles also represented to representatives of the Ronald McDonald House that Defendants had the current intent to pay Ronald McDonald House $1,100,000, in installments. Bayles also represented to Ronald McDonald House that Defendants could post their assets as collateral for the $1.1 Million Payment, and that Defendants were free and clear to do so. Bayles also represented that Defendants had current, accurate and certified financial statements to provide to Ronald McDonald House and would do so. All of the Misrepresentations were false when Bayles made them, as indicated in part by Defendants' counsel on the December 31 Call.

6

26. Ronald McDonald House relied on these statements in spending time and money to prepare drafts of the Formal Agreement; suspending the Arbitration; reporting the Contract to its board; and expending other time and money in furtherance of the Contract.

**COUNT I-BREACH OF THE CONTRACT—ALL DEFENDANTS EXCEPT BAYLES**

27. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 26 by and for paragraph 27 of Count I as if more fully alleged herein.

28. The Contract is valid and binding, and the result of Defendants' offer, Ronald McDonald House's acceptance of that offer, and valid consideration.

29. Defendants breached the Contract by repudiating it, by failing to make the first two installments of the $1.1 Million Payment on a timely basis, and by otherwise breaching the Contract. Ronald McDonald House complied with all material terms of the Contract. Ronald McDonald House fully performed its material obligations pursuant to the Contract.

30. As a direct and proximate result of Defendants' breach of the Contract, Ronald McDonald House has suffered damages in excess of $1,100,000.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company, in the amount of at least $1,100,000, plus costs and other relief deemed just.

**COUNT II-SPECIFIC PERFORMANCE—ALL DEFENDANTS EXCEPT BAYLES**

31. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 30 by and for paragraph 31 of Count II as if more fully alleged herein.

32. The Contract is valid and binding, and the result of Defendants' offer, Ronald McDonald House's acceptance of that offer, and valid consideration.

33. Defendants breached the Contract by repudiating it, by failing to make the first two installments of the $1.1 Million Payment on a timely basis, and by otherwise repudiating the Contract. Ronald McDonald House complied with all material terms of the Contract, and fully performed its obligations pursuant to the Contract.

34. Pleading in the alternative, Defendants should be ordered to specifically perform the Contract because money damages will not adequately compensate Ronald McDonald House.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company, ordering Defendants to specifically perform the Contract, entering an award for damages and declaratory relief as appropriate, plus costs and other relief deemed just.

**COUNT III-FRAUDULENT MISREPRESENTATION—ALL DEFENDANTS**

35. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 34 by and for paragraph 35 of Count III as if more fully alleged herein.

36. As alleged herein, Defendants, through Bill Bayles, on November 20, 2012, falsely stated material facts to Ronald McDonald House representatives at a live, in-person meeting (the Misrepresentations).

37. Bayles, on behalf of all Defendants, made the Misrepresentations knowing of their falsity, and with the intent that Ronald McDonald House act on them (including, but not

8

limited to, Ronald McDonald House ceasing in its aggressive prosecution of the Arbitration).

38. Defendants made the Misrepresentations for the purpose of holding Ronald McDonald House at bay; to buy time for the Defendants; to stall the Arbitration; and to induce Ronald McDonald House to relent in its pursuit of Defendants.

39. Ronald McDonald House, through its chief executive officer and general counsel, did rely on the Misrepresentations, as evidenced by its directing of outside counsel to participate in the drafting of the Formal Agreement, presenting the Contract to its board, and in holding off in the prosecution of the Arbitration.

40. Ronald McDonald House's reliance on the Misrepresentations was reasonable and justifiable, as the Misrepresentations were made by Defendants' principal (William Bayles) in the presence of Defendants' counsel.

41. As a direct and proximate result of Defendants' fraud, Ronald McDonald House has suffered damages in excess of $1,100,000.

42. Defendants' fraud was willful and malicious, especially considering Ronald McDonald House's charitable purpose. Accordingly, Ronald McDonald House is entitled to an award of punitive damages from the Defendants in the maximum amount permitted by law, and to be determined at trial.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited

liability company; and, WILLIAM BAYLES, in the amount of at least $1,100,000, plus attorney's fees as compensatory damages, punitive damages, costs and other relief deemed just.

### COUNT IV-UNJUST ENRICHMENT—ALL DEFENDANTS

43. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 18, 25-26 and 25-42 by and for paragraph 43 of Count IV as if more fully alleged herein.

44. Pleading in the alternative, and to the extent that the Court finds there to be no valid and binding contract between Ronald McDonald House and Defendants, then Defendants were unjustly enriched at the expense of Ronald McDonald House. Defendants retained a benefit conferred by Ronald McDonald House. It would be inequitable for retain such benefit without compensation to Ronald McDonald House.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company; and WILLIAM BAYLES, in the amount of at least $1,100,000, plus appropriate equitable relief, costs and other relief deemed just.

### COUNT V-PROMISSORY ESTOPPEL—ALL DEFENDANTS EXCEPT BAYLES

45. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 18, 25-26 and 25-42 by and for paragraph 45 of Count V as if more fully alleged herein.

46. Pleading in the alternative, and to the extent that the Court finds there to be no valid and binding contract between Ronald McDonald House and Defendants, then Ronald

McDonald House is entitled to recover from Defendants pursuant to the doctrine of promissory estoppel.

47. Defendants unambiguously promised the following to Ronald McDonald House: to pay Ronald McDonald House $1,100,000; that Defendants had the current intent to make such payments; that Defendants had the current ability to post specified security to Ronald McDonald House and would do so; and that Defendants had current, accurate and certified financial statements to provide to Ronald McDonald House and would do so (the "Promises").

48. Ronald McDonald House, through its chief executive officer and general counsel, did rely on the Promises, as evidenced by its directing of outside counsel to participate in the drafting of the Formal Agreement, and in holding off in the prosecution of the Arbitration.

49. Ronald McDonald House's reliance on the Misrepresentations was reasonable and justifiable, as the Promises were made by Defendants' principal (William Bayles) in the presence of Defendants' counsel. Defendants expected and foresaw Ronald McDonald House's reliance on the Misrepresentations, as alleged herein.

50. As a direct and proximate result of Ronald McDonald House's reasonable and justifiable reliance on the Promises, Ronald McDonald House has suffered detriment and injury.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company, in the amount of at least $1,100,000, plus appropriate equitable relief, costs and other relief deemed just.

## COUNT VI-PROMISSORY FRAUD—ALL DEFENDANTS EXCEPT BAYLES

51. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 18, 25-26 and 25-50 by and for paragraph 51 of Count VI as if more fully alleged herein.

52. Pleading in the alternative, and to the extent that the Court finds there to be no valid and binding contract between Ronald McDonald House and Defendants, then Ronald McDonald House is entitled to recover from Defendants under the theory of promissory fraud.

53. Defendants made a promise to perform the Promises without any intent to keep the Promises. Defendants made the Promises to Ronald McDonald House with the intent that Ronald McDonald House rely on the Promises.

54. Ronald McDonald House, through its chief executive officer and general counsel, did rely on the Promises to its detriment, as evidenced by its directing of outside counsel to participate in the drafting of the Formal Agreement, and in holding off in the prosecution of the Arbitration.

55. Defendants' false Promises and Misrepresentations constituted a fraudulent scheme or device to defraud Ronald McDonald House.

56. As a direct and proximate result of Ronald McDonald House's reasonable and justifiable reliance on the Promises, Ronald McDonald House has suffered detriment and injury.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited

liability company, in the amount of at least $1,100,000, plus appropriate equitable relief, costs and other relief deemed just.

### COUNT VII-EQUITABLE ESTOPPEL—ALL DEFENDANTS

57. Ronald McDonald House adopts and incorporates herein paragraphs 1 through 18, 25-26 and 25-56 by and for paragraph 57 of Count VII as if more fully alleged herein.

58. Pleading in the alternative, and to the extent that the Court finds there to be no valid and binding contract between Ronald McDonald House and Defendants, then Ronald McDonald House is entitled to recover from Defendants pursuant to the doctrine of equitable estoppel.

59. Defendants unambiguously made the Promises and Misrepresentations to Ronald McDonald House.

60. Defendants knew the Promises and Misrepresentations were untrue when they made them, as evidenced by the relatively short time frame in which they repudiated them.

61. Ronald McDonald House did not know that the Promises and Misrepresentations were false when Defendants made them. The Promises and Misrepresentations, at relevant times, were comprised of knowledge and information peculiarly within Defendants' control.

62. Ronald McDonald House, through its chief executive officer and general counsel, did rely on the Promises and Misrepresentations, as evidenced by its directing of outside counsel to participate in the drafting of the Formal Agreement, and in holding off in the prosecution of the Arbitration.

63. Ronald McDonald House's reliance on the Promises and Misrepresentations was reasonable and justifiable, as the Promises and Misrepresentations were made by Defendants' principal (William Bayles) in the presence of Defendants' counsel. Defendants intended,

13

expected and foresaw that Ronald McDonald House would rely on the Promises and Misrepresentations, as alleged herein.

64. Ronald McDonald House has been, and will continue to be, placed in a position of prejudice as a result of Defendants' later denial of the truth of the Promises and Misrepresentations.

65. As a direct and proximate result of Ronald McDonald House's reasonable and justifiable reliance on the Promises and Misrepresentations, Ronald McDonald House has suffered detriment and injury.

WHEREFORE, Plaintiff, RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois not-for-profit corporation requests that this Court enter judgment against the Defendants, WINNING CHARITIES ILLINOIS LLC, a Delaware limited liability company; WINNING CHARITIES INC., a Canadian federal corporation; and, CHARITY ASSURANCE GROUP, LLC, a Delaware limited liability company, and WILLIAM BAYLES, in the amount of at least $1,100,000, plus appropriate equitable relief, costs and other relief deemed just.

**JURY TRIAL DEMANDED**

**RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND and NORTHWEST INDIANA, INC.,**

**By:** /s/Robert H. Lang
      **One of Its Counsel**

Robert Lang (rhlang@thompsoncoburn.com) (ARDC No. 6225414)
Susan Lorenc (slorenc@thompsoncoburn.com) (ARDC No. 6278471)
Matthew Johns (mjohns@thompsoncoburn.com) (ARDC No. 6307887)
Thompson Coburn LLP
55 E. Monroe Street, #3700
Chicago, Illinois 60603
(312) 346-7500