**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois Not-For-Profit Corporation,<br><br>     Plaintiff,<br><br>         v.<br><br>WINNING CHARITIES ILLINOIS, LLC, a Delaware Limited Liability Company; WINNING CHARITIES, INC., a Canadian Federal Corporation; CHARITY ASSURANCE GROUP, LLC, a Delaware Limited Liability Company, and WILLIAM BAYLES, an Individual,<br><br>     Defendants. | Civil Action No. 13−CV−01430<br><br>The Honorable Charles Norgle, Sr. Presiding Judge<br><br>The Honorable Michael Mason Magistrate Judge |
| WINNING CHARITIES ILLINOIS, LLC, a Delaware Limited Liability Company,<br><br>     Counter-Plaintiff,<br><br>         v.<br><br>RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois Not-For-Profit Corporation,<br><br>     Counter-Defendant. | |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on Tuesday July 9, 2013, the undersigned caused Plaintiff and Counter-Defendant Ronald McDonald House Charities of Chicagoland and Northwest Indiana, Inc.'s **Motion to Dismiss Winning-Charities Illinois LLC's Counterclaim and Strike Immaterial Allegations Pursuant to Federal Rules of Civil Procedure 12(b)(6) and**

**12(f)** to be filed via the Court's CM/ECF System.

RONALD MCDONALD HOUSE
CHARITIES OF CHICAGOLAND AND
NORTHWEST INDIANA, INC.

By:     */s/ Robert H. Lang*_____

Robert H. Lang
Susan Lorenc
Matthew S. Johns
Thompson Coburn, LLP
55 E. Monroe – 37th Floor
Chicago, Illinois 60603
Telephone:  (312) 580-2242
Facsimile:  (312) 782-1042
Email rhlang@thompsoncoburn.com; slorenc@thompsoncoburn.com;
mjohns@thompsoncoburn.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 9, 2013, he caused the foregoing **Motion to Dismiss Winning-Charities Illinois LLC's Counterclaim and Strike Immaterial Allegations Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f)** to be served via: (1) the Court's CM/ECF System; (2) first-class U.S. Mail, postage prepaid; and (3) electronic mail upon the following counsel of record:

Dennis F. Esford, Esq.
Windy City Trial Group, Inc.
233 S. Wacker Drive, 84th Floor
Chicago, IL 60606
(312) 283-8222
denny@windycitytrialgroup.com

*/s/ Robert H. Lang*_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois Not-For-Profit Corporation, | |
| Plaintiff, | Civil Action No. 13−CV−01430 |
| v. | The Honorable Charles Norgle, Sr. Presiding Judge |
| WINNING CHARITIES ILLINOIS, LLC, a Delaware Limited Liability Company; WINNING CHARITIES, INC., a Canadian Federal Corporation; CHARITY ASSURANCE GROUP, LLC, a Delaware Limited Liability Company, and WILLIAM BAYLES, an Individual, | The Honorable Michael Mason Magistrate Judge |
| Defendants. | |
| WINNING CHARITIES ILLINOIS, LLC, a Delaware Limited Liability Company, | |
| Counter-Plaintiff, | |
| v. | |
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., an Illinois Not-For-Profit Corporation, | |
| Counter-Defendant. | |

**PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM
AND STRIKE IMMATERIAL ALLEGATIONS PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(b)(6) AND 12(f)**

Plaintiff and Counter-Defendant Ronald McDonald House Charities of Chicagoland and

Northwest Indiana, Inc. ("RMHC"), hereby submits its Motion to Dismiss Winning-Charities

Illinois LLC's Counterclaim and Strike Immaterial Allegations Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). In support, RMHC states as follows:

## I. SUMMARY OF ARGUMENT

WCI's Counterclaim [CM/ECF Docket No. 24] (the "Counterclaim") should be dismissed for several reasons:

- First, WCI fails to properly allege that RMHC actually breached the Parties' agreements.[1] Instead, WCI alleges that RMHC breached fictitious contractual provisions that cannot be found in the Parties' agreements. As such, the Counterclaim fails to state a claim upon which relief can be granted;

- The Counterclaim should also be dismissed because the allegations contained therein are directly refuted by the express terms of the underlying agreements;

- Additionally, the Counterclaim should be dismissed because WCI has pled itself out of court by setting forth allegations that preclude the relief requested in the Counterclaim; and

- Dismissal is proper because WCI improperly alleges a right to punitive damages when its sole claim is for breach of contract.

Moreover, certain of the allegations contained in the Counterclaim should be stricken pursuant to Federal Rule of Civil Procedure 12(f) as they are immaterial to the relief requested therein. Last, WCI's claim for compensatory damages should be denied as it is directly refuted by a plain reading of the liquidated damages provision in the Parties' agreement.

## II. ARGUMENT

### A. Legal Standards[2]

Where there is a disparity between a written instrument attached to a pleading and an allegation in the pleading based thereon, the written instrument will control. To that end, "[a]

---

[1] True and accurate copies of the "Raffle Indemnification Agreement" and "Raffle Consultancy Agreement" are attached hereto as Exhibits A and B respectively. Those agreements are hereinafter, collectively referred to as the "Counterclaim Agreements."

[2] RMHC will not repeat the well-known standards of FRCP 12(b)(6), Twombly and Iqbal here.

plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." In re Wade, 969 F.2d 241, 249 (7th Cir. 1992).

Furthermore, a plaintiff can plead himself out of court if he pleads facts that preclude relief or when it would be necessary to contradict the complaint in order to prevail on the merits. See, Atkins v. City of Chi., 631 F.3d 823, 832 (7th Cir. 2011); Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008); Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007); McCready v. Ebay, Inc., 453 F.3d 882, 888 (7th Cir. 2006).

**B.      The "First Breach" Alleged In The Counterclaim Does Not Support A Cause Of Action For Breach Of Contract Because WCI Fails To Properly Allege An Actual Breach Of The Parties' Agreements**

In the Counterclaim, WCI alleges that RMHC breached the Raffle Indemnification Agreement by orally demanding changes to the terms and provisions of that agreement regarding the funding the First Raffle.  (Counterclaim, ¶ 47.)  WCI, however, fails to allege which contractual provision of the Raffle Indemnity Agreement RMHC breached by allegedly requesting changes to the funding of the First Raffle.  Indeed, WCI cannot point to a specific contractual provision because such a provision does not exist.

Even assuming for the sake of argument that RMHC did in fact request changes related to the funding of the First Raffle, such a request does not a constitute a breach of the Raffle Indemnification Agreement.  Accordingly, the Counterclaim should be dismissed pursuant to Rule 12(b)(6) because WCI has failed to properly allege that RMHC has breached the Counterclaim Agreements.  See, Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 560 (7th Cir. 2012) (breach of an actual contractual provision is a required element for a breach of contract claim).

**C.     WCI's Claimed "Second Breach" Fails To Properly Allege A Breach Of Contract Because The Allegations Related Thereto Are Directly Refuted By The Controlling Exhibits Attached To The Counterclaim**

In the Counterclaim, WCI alleges that RMHC committed a "second breach" of the Counterclaim Agreements by cancelling a $4,000,000 line of credit related to the second raffle. (Counterclaim, ¶ 53.)  However, RMHC did not have a duty to maintain a line of credit with respect to any raffle.  It is axiomatic that without a duty, there can be no breach.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (breach of a contractual duty is an essential element of a breach of contract claim).  Section 5(e) of the Raffle Consultancy Agreement is the only provision therein that imposes any requirement upon RMHC to maintain any type of bank account, and it states, in relevant part, that RMHC shall maintain a trust account, to which RMHC will have exclusive access, for the sole purpose of compensating vendors which provide goods or services related to the raffles.  See, Section 5(e) of the Raffle Consultancy Agreement. There is no requirement in Section 5 or any other provision within the Raffle Consultancy Agreement that requires RMHC to maintain a $4,000,000 line of credit – a fatal absence to WCI's claim.  Tellingly, WCI again fails to set forth which contractual provision RMHC allegedly breached by failing to maintain a line of credit with respect to the raffles. Undoubtedly, WCI cannot point to any such contractual provision because it simply does not exist.

When WCI's allegations are taken as a whole, it is apparent that WCI is seeking to impose contractual obligations upon RMHC which are not found in the Counterclaim Agreements.  Indeed, a plain reading of those contracts reveals that WCI's allegations regarding RMHC's obligations under the Counterclaim Agreements are contradicted by the express provisions of the Counterclaim Agreements themselves.  See, ALA, Inc. v. CCAIR, Inc., 29 F.3d

6

855, 859 n. 8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to

a pleading and an allegation in the pleading based thereon, the written instrument will control.").

For these reasons, RMHC requests that WCI's improper request for consequential damages be

denied.


**D.  WCI's Claimed "Third Breach" Fails To Properly Allege A Breach Of Contract Because The Allegations Related Thereto Are Directly Refuted By The Controlling Exhibits Attached To The Counterclaim**

WCI claims that RMHC committed a "third breach" of the Counterclaim Agreements by

terminating the second, third and fourth raffles.  (Counterclaim, ¶ 58.)  Section 2.2 of the Raffle

Indemnification Agreement provides that:

> RMHC shall have the right to cancel any future Raffle where it perceives the threat of unreasonable and irreparable harm to the Ronald McDonald House Charities of Chicagoland and Northwest Indiana brand caused by operation of the Raffle.  In such instance, the parties agree to cooperate in an effort to mitigate losses.

Thus, Section 2.2 of the Raffle Indemnification Agreement affords RMHC the unilateral

right to terminate any raffle that it perceives may unreasonably and irreparably harm its brand.

Furthermore, in the event that RMHC terminates a raffle pursuant to Section 2.2 of the Raffle

Indemnification Agreement, such termination cannot constitute a breach of the Counterclaim

Agreements.

Moreover, WCI acknowledges that RMHC incurred a $2,839,376.92 loss as a result of

the failed First Raffle.  (See, Counterclaim, ¶¶ 35, 36) ("The financial results of Raffle 1, agreed

to by both parties, was a net investment loss of $2,839,376.92.").  Based upon the unmitigated

failure that was the First Raffle, RMHC perceived that if it were to incur a loss similar to that

7

incurred as a result of the First Raffle, unreasonable and irreparable harm would be caused to RMHC's brand. As a result, RMHC exercised its unfettered right to terminate the second, third, and fourth raffles, in accordance with Section 2.2 of the Raffle Indemnification Agreement.

Based upon the foregoing, WCI's allegations that RMHC breached the Counterclaim Agreements by terminating the second, third and fourth raffles is directly contradicted by Section 2.2 of the Raffle Indemnification Agreement. For this reason the Counterclaim should be dismissed as WCI has pled itself out of court. In re Wade, 969 F.2d at 249 ("[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."); Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d at 991 ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom."). In order for the Court to grant WCI the relief requested in the Counterclaim, it must disregard the allegation in the Counterclaim that RMHC incurred a $2,839,376.92 loss a result of the First Raffle. The Court would also have to disregard Section 2.2 of the Raffle Indemnification Agreement, which affords RMHC the unilateral discretion to terminate any raffle that RMHC perceives to be a threat to its brand.

Based upon the foregoing, the Counterclaim should be dismissed because WCI has: (1) set forth allegations in the Counterclaim that are directly refuted by the exhibits attached thereto; and (2) pled itself out of Court with respect to allegations contained in the Counterclaim.

**E.** **WCI's Claimed "Fourth Breach" Fails To Properly Allege A Cause Of Action For Breach Of Contract**

WCI alleges that RMHC committed a "fourth breach" of the Counterclaim Agreements by commencing this cause of action against WCI instead of arbitrating the Parties' disputes.

(Counterclaim, ¶ 67.)  Specifically, WCI alleges that the Counterclaim Agreements require RMHC and WCI to arbitrate any disputes under the Counterclaim Agreements.  (Id., at ¶ 68.)

WCI's argument is a red herring.  RMHC did not commence this lawsuit as a result of WCI's breach of either of the Counterclaim Agreements.  Instead, RMHC commenced this lawsuit to recover against WCI for its breach of the RMHC Agreement.  (See, Complaint, ¶¶ 19-24, 28-30, 32-34.)  Additionally, RMHC has named parties other than WCI as Defendants, and these other Defendants did not sign the Counterclaim Agreements.  Accordingly, WCI's allegation that RMHC breached a contractual provision by failing to arbitrate this matter fails to state a claim upon which relief can be granted and the Counterclaim must therefore be dismissed.

More practically, WCI's remedy for the alleged "fourth breach" would have been to compel arbitration pursuant to the Federal Arbitration Act.  WCI failed to do so.  Instead, WCI moved to dismiss and then answered RMHC's Complaint.  WCI also filed its own Counterclaim before this Court and not the American Arbitration Association.  It is well established that a party may waive a contractual right to arbitrate expressly or implicitly.  See, e.g., Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004)  Furthermore, a party's "election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate"  Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F. 3d 388, 390 (7th Cir. 1995).  Therefore, by answering the Complaint and filing the Counterclaim, WCI has waived any assertions based on RMHC's alleged "failure" to arbitrate.

**F.    The Counterclaim Should Be Dismissed Because It Improperly Seeks Punitive Damages Under A Breach Of Contract Claim**

The Counterclaim consists of a single count for breach of contract. (See, Counterclaim, ¶¶ 71-77.) Yet, WCI seeks to recover punitive damages against RMHC. (See, Id., at ¶ 77.) WCI's request for punitive damages is entirely improper, as a matter of law, and must be denied. Here, the Counterclaim Agreements are governed by Illinois law. (See, Raffle Consultancy Agreement, at ¶ 11; Raffle Indemnification Agreement, ¶ 9.) It is well-founded that that a party suing for breach of contract is entitled only to compensatory damages. Garman v. New York Life Insurance Co., 501 F.Supp. 51, 53 (N.D. Ill. 1980); McGrady v. Chrysler Motors Corp., 46 Ill. App. 3d 136, 141, 360 N.E.2d 818 (Ill. App. Ct. 1977); Restatement (Second) of Contracts, § 355 (1979). ("The purposes of awarding contract damages is to compensate the injured party. For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others...").

Furthermore, WCI's characterization of RMHC's alleged breach as "willful" and "baseless" does not change the fact that WCI is seeking punitive damages for an alleged breach of contract. See, Sorkin v. Blackman, Kallick & Co., Ltd., 184 Ill. App. 3d 873, 881, 540 N.E.2d 999, 1002 (1st. Dist. 1989) ("Simply characterizing a breach of contract as 'willful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest. We cannot agree that a breach of contract becomes a tort just because the breach was willful and wanton."). For these reasons the Counterclaim should be dismissed.

## G. WCI's Request For Compensatory Damages Should Be Denied Because WCI's Damages, If Any, Are Limited by Section 10(b)(i) of the Raffle Consultancy Agreement.

Section 10(b) of the Raffle Consultancy Agreement affords WCI the unilateral right to terminate the Raffle Consultancy Agreement. (See, Raffle Consultancy Agreement, § 10(b).) In the event that RMHC elects to terminate the Raffle Consultancy Agreement pursuant to Section

10

10(b)(i), WCI's damages are to be determined in accordance with the liquidated damages provision contained in Section 10(b)(i). To that end, Section 10(b)(i) provides in relevant part that:

> In the event of termination by RMHC pursuant to Section 10(b) of this Agreement, any expenses paid by, or Operating Costs incurred by WCI with respect to upcoming Raffle(s) prior to its receipt of RMHC's termination notice will be reimbursed in full by RMHC within five (5) days following WCI's request. In addition, if the termination of this Agreement is effective prior to the completion of four (4) Raffles, RMHC shall pay to WCI, as liquidated damages and not as a penalty, the sum of $200,000.

Here, WCI cannot contest RMHC's right to terminate the Raffle Consultancy Agreement pursuant to Section 10(b). As such, WCI's damages are limited to: (a) the expenses or costs incurred by WCI related to "upcoming" raffles (which were not alleged by WCI in the Counterclaim); and/or (b) liquated damages in the amount of $200,000. (See, Raffle Consultancy Agreement, § 10(b)(i).)

Based on the foregoing, and to the extent that the Counterclaim is not dismissed in its entirety, WCI's damages should be limited to $200,000 as set forth in Section 10(b)(i) of the Raffle Consultancy Agreement. See, Music Dealers, LLC v. Sierra Bravo Corp., 2012 WL 4017950 *6-7 (N.D. Ill. Sept. 10, 2012) (denying request for consequential damages where agreement between parties contained a liquidated damages provisions limiting plaintiff's damages); see also, ALA, Inc. v. CCAIR, Inc., 29 F.3d at 859 n. 8 ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). For these reasons, RMHC requests that WCI's improper request for consequential damages be denied.

**H.      Paragraph 21 Of The Counterclaim Should Be Stricken Pursuant To Federal Rule Of Civil Procedure 12(f) Because Those Allegations Are Immaterial To The Relief Requested In The Complaint**

Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") allows Court's to strike allegations from a pleading that are immaterial to the relief request. See, Fed. R. Civ. P. 12(f). To that end, Rule 12(f) provides that "the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Id.; see also, Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if they bear no possible relation to controversy). Courts have considerable discretion when ruling on a motion to strike pursuant to Rule 12(f). Delta Consulting Grp., Inc. v. R. Randle Const., Inc., 554 F.3d 1133, 1141-42 (7th Cir. 2009).

Here, the Counterclaim contains several allegations that are immaterial to WCI's allegations and request for relief. For example, in Paragraph 21 of the Counterclaim, WCI sets forth allegations that are entirely irrelevant and immaterial to the relief requested in the Counterclaim, and instead appear to serve no other purpose than touting WCI's purported fund raising potential. (See, Counterclaim, ¶ 21) ("Illinois based market research firm Milward Brown's results indicated estimated market potential in the United States to be well over $1 billion in additional net proceeds to charities through [WCI's] media intense raffle program.").

WHEREFORE, Plaintiff and Counter-Defendant Ronald McDonald House Charities of Chicagoland and Northwest Indiana respectfully requests the entry of an Order: (1) dismissing the Counterclaim filed by Defendant and Counter-Plaintiff Winning Charities Incorporated with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) alternatively, dismissing any discrete portions of the Counterclaim otherwise addressed by this Motion; and (3) granting RMHC all other and further relief as is just and proper. Alternatively, RMHC requests the entry of an Order denying WCI's request for compensatory damages and limiting WCI's claim for damages to $200,000 as set forth in Section 10(b)(i) of the Raffle Consultancy Agreement.

12

RONALD   MCDONALD   HOUSE
CHARITIES OF CHICAGOLAND AND
NORTHWEST INDIANA, INC.

By:   */s/ Robert H. Lang*              

Robert H. Lang
Susan Lorenc
Matthew S. Johns
Thompson Coburn, LLP
55 E. Monroe – 37th Floor
Chicago, Illinois 60603
Telephone:  (312) 580-2242
Facsimile:  (312) 782-1042
Email rhlang@thompsoncoburn.com; slorenc@thompsoncoburn.com;
mjohns@thompsoncoburn.com