IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 13 CV 1430<br>)<br>) Magistrate Judge Michael T. Mason |
| WINNING CHARITIES ILLINOIS, LLC, et al., | )<br>)<br>) |
| Defendants. | ) |
| WINNING CHARITIES ILLINOIS, LLC, | )<br>)<br>) |
| Counter-Plaintiff, | )<br>) |
| v. | )<br>) |
| RONALD MCDONALD HOUSE CHARITIES OF CHICAGOLAND AND NORTHWEST INDIANA, INC., | )<br>)<br>)<br>) |
| Counter-Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court are the parties' cross motions for summary judgment. Plaintiff seeks judgment as to Count I (breach of contract) and Count II (seeking specific performance) of its complaint. Defendant also seeks summary judgment as to Count I of plaintiff's complaint, in addition to Count III (fraudulent misrepresentation) and Count VI (promissory fraud). For the reasons set forth below, both motions are denied.

I.   **Background**

The following facts are taken from the parties' Local Rule 56.1 statements, the responses thereto, and the supporting evidentiary materials. The facts are undisputed

unless otherwise noted.

Ronald McDonald House Charities ("RMHC") is a non-profit corporation that provides services for families of sick children. In August 2011, and later again in February 2012, RMHC entered into a Raffle Consultancy Agreement and a Raffle Indemnification Agreement (the "previous agreements") with certain Winning Charities entities ("WCI") whereby WCI would create and run a series of media intense charity raffles on behalf of RMHC. The first and only raffle conducted by the parties incurred a net investment loss of $2,839,376.92. At some point thereafter, the parties had a dispute as to their obligations and duties under the previous agreements.[1] On July 19, 2012, RMHC initiated arbitration against WCI before the American Arbitration Association pursuant to the previous agreements, asserting claims for fraud and other claims, and seeking $2,800,000 in damages.

On November 20, 2012, the parties met in Rosemont, Illinois to discuss settlement of their dispute. Present at the settlement meeting for RMHC were CEO Doug Porter, general counsel Kathleen Smith, and outside counsel Robert Lang. Present for WCI were principal William Bayles, attorney Greg Hague, and outside counsel Scott Levin. Though the parties dispute whether Hague was present as an attorney for WCI or simply as a mediator, they agree that Hague helped facilitate negotiations. The meeting lasted two to three hours. At the conclusion of the meeting, the parties reached a "settlement in principal."

The day after the meeting, plaintiff's counsel Robert Lang sent an e-mail to Levin, with a copy to Hague, Porter, and Smith, titled "Settlement in Principle." It reads:

---

[1] The parties' dispute regarding the underlying agreements is the subject of the newly added claims in plaintiff's amended complaint [92] and defendants' amended counterclaim [43].

> *Scott,*
>
> *This is to document our clients' agreement in principle:*
>
> 1. *Total payment by your clients to RMHC: $1,100,000.*
>
> 2. *Payout:*
>
>    a. *$50,000 at the time of execution of the release and settlement agreement ("SA"), which must occur on or before January 4, 2013.*
>    b. *$25,000 on or before February 15, 2013.*
>    c. *$25,000 on or before March 15, 2013.*
>    d. *$333,333.33 on or before December 31, 2013.*
>    e. *$333,333.33 on or before December 31, 2014.*
>    f. *$333,333.33 on or before December 31, 2015.*
>
> 3. *Security:*
>
>    g. *Arbitration award held in escrow that will be fully confirmable in US and Canadian court against any and all WCI companies (whether formed at this time or formed prior to payment in full. The escrowed award may be supplemented to account for subsequently-formed entities).*
>    h. *UCC lien on assets, subordinate only to the one lender mentioned by Bill at the meeting.*
>    i. *Any other security short of a personal guaranty reasonably requested by RMHC. We will advise. It is likely that such security will include prohibitions/protections against fraudulent or other conveyances, that we will not release WCI shareholders from personal liability (although we are not insisting that the escrowed award name them), that RMHC's debt will not be subordinated, etc.*
>
> 4. *Diligence:*
>
>    j. *WCI and affiliates to provide certified financials and tax returns for past three years.*
>    k. *Rep and warranty that there are no other claims or litigation pending.*
>
>    *We will document this all in the SA, which, again, must be executed on or before January 4, 2013.*
>
>    *Greg-nice to meet you and hope you had a safe trip back.*

The record does not contain a response to this e-mail from Levin to Lang. Instead, on November 30, 2012, Lang e-mailed Levin again stating, "Scott - will you be preparing the

first draft of the [settlement agreement]." Levin responded a few days later with "Rob, will do."

Thereafter, the parties exchanged drafts of written settlement agreements, though no written agreement was ever executed. At some point in late December 2012, Bayles advised attorney Levin that he could not comply with the terms of the agreement as they stood due to financial reasons, the language of a favorable trade reference clause, and a clause allowing a lien on certain of WCI's accounts and assets. On December 31, 2012, Levin, Hague, and Lang participated in a conference call during which Levin informed RMHC of WCI's proposal to change some of the terms, including a proposal to reduce the $50,000 initial payment to $25,000. RMHC contends, and WCI disputes, that during that call Hague said words to the effect of there was no doubt we "had a deal."

The defendants never made any payments to RMHC and this action followed. Of course now, and as explained in more detail below, the parties dispute whether the "settlement in principle" reached at the November 20 meeting was an enforceable agreement subsequently breached by defendants.

## II.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party, and may enter summary judgment only if the

4

record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

III. Analysis

  A. Defendants' Motion for Summary Judgment

We quickly dispose of defendants' motion for summary judgment. Though couched as a motion for summary judgment, defendants' motion, as plaintiff points out, simply reiterates many of the arguments raised in defendants' previously filed Rule 12(b)(6) motion to dismiss [13] and memorandum in support thereof [14]. Indeed, in the instant motion, defendants argue, in a conclusory manner and true to a Rule 12(b)(6) motion, that plaintiff has failed to allege facts supporting its claims for fraudulent misrepresentation and promissory fraud. Defendants also again argue that the evidence supporting plaintiff's breach of contract claim is inadmissable under Federal Rule of Evidence 408, which, as a general matter, prohibits the admission of conduct or statements made during settlement negotiations to "prove or disprove the validity or amount of a disputed claim." Fed. R. Ev. 408 (a)(2).

Judge Norgle already rejected defendants' arguments when he denied their motion to dismiss back on May 3, 2013, finding that plaintiff had plausible claims against the defendants to withstand a 12(b)(6) motion. We see no reason to re-visit Judge Norgle's ruling. Further, the issue of the admissibility of evidence is a non-starter, even at this stage of the proceedings. As the Seventh Circuit has stated, "[o]bviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement." *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.1985); *see also, Carolina Indus. Products, Inc. v. Learjet, Inc.*, 168

F. Supp. 2d 1225, 1229 (D. Kan. 2001) (collecting cases applying exceptions to Rule 408). Thus, we reject defendants' assertion that the evidence of record here is inadmissable under Rule 408 to prove plaintiff's claim of breach of contract.

To the extent defendants would argue that their motion should instead be viewed as a motion for judgment on the pleadings pursuant to Rule 12(c) (since it was filed after they answered the complaint) they have utterly failed to show that it appears beyond a doubt that the plaintiff cannot prove any facts that would support its claim for relief. *Thomas v. Guardsmark, Inc.*, 81 F.3d 701, 704 (7th Cir. 2004). For all of these reasons, defendants' motion is denied.

### B. Plaintiff's Motion for Summary Judgment

Again, plaintiff seeks judgment in its favor on its claims for breach of contract and specific performance, arguing that there is no genuine issue of material fact that the parties entered into an enforceable agreement at the November 20 settlement conference, which defendants subsequently breached. Plaintiff takes the position that whether construed as a written contract encompassed in Lang's e-mail to Levin, or an oral contract reached at the meeting, the contract is enforceable. Defendants respond that the agreement reached at the November 20 meeting was a non-enforceable agreement in principle, simply setting the stage for future negotiations, as evidenced by the parties' subsequent conversations back and forth regarding a change in payment schedule and favorable trade language.

Settlement agreements are enforced like any other contract. *See In re Illinois Bell Tele. Link–Up II*, 994 N.E.2d 553, 558, 373 Ill. Dec. 784 (1st Dist. 2013) (settlement "agreements are construed and enforced under principles of contract law"). To prevail on

a claim for breach of contract under Illinois law a party must prove "(1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (quoting *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.*, 357 Ill. Dec. 570, 963 N.E.2d 968, 981 (Ill. App. 2011)). Oral settlement agreements are enforceable under Illinois law if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 663-64 (7th Cir. 1995) (quoting *Brewer v. Nat'l R.R. Corp.*, 256 Ill. App. 3d 1083, 194 Ill. Dec. 834, 628 N.E.2d 331, 335 (1993)). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 291 Ill. Dec. 305, 823 N.E.2d 597, 603 (2005).

Specific performance, of course, is not an independent cause of action, but a remedy sought for a breach of contract claim. *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371,1376 (7th Cir.1994). It is an "exceptional remedy and is normally available only when damages constitute an inadequate remedy" and "only when the terms of the contract are sufficiently specific to allow the precise drafting of such an order." *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 637 (7th Cir. 2007).

After reviewing the record, and viewing the facts in favor of defendants, we simply cannot agree with plaintiff that there exists no genuine issue of material fact as to whether the parties came to a meeting of the minds at the November 20 conference, or thereafter in the e-mail exchanges. Though plaintiff steadfastly relies on Levin's testimony that the parties reached an agreement in principle regarding key terms, Levin made clear that he

7

was not of the opinion that the parties reached an enforceable agreement. Other testimony from Levin indicates that he believed that following the meeting Bayles had to "go back to make sure he could do everything it agreed to in terms of getting the liens and making it happen." (Levin Dep. at 36.) Additionally, e-mails in the record show the parties continued to discuss (with each other and amongst themselves) the security that Bayles could provide, the stipulated award upon default, and the language of the favorable trade language. In his own affidavit, Bayles avers that at the meeting, he informed representatives of RMHC through his "counsel Scott Levin to Greg Hague" that he had to discuss the financial aspects of the proposed settlement with defendants' investors and accountants to determine if the financial terms could even be satisfied. Though self-serving standing alone, combined with the other testimony and documents of record, Bayles' affidavit furthers illustrates that an issue of fact remains here as to whether the parties reached an enforceable agreement. One more issue requires comment. Plaintiff argues that should the Court find that a genuine issue of material fact remains, it should conduct an expedited evidentiary hearing. In doing so, plaintiff cites *Pritchett v. Asbestos Claims Management Corp.,* 332 Ill. App. 3d 890, 773 N.E.2d 1277 (Ill. App. Ct. 2002), for the proposition that an "evidentiary hearing may be appropriate when there are disputed issues regarding the formation and terms of a settlement agreement." *Pritchett* presents a different procedural posture in that the parties appear to have been litigating their underlying claims before the Court, reached an agreement, and subsequently filed a motion to enforce that agreement with the same court. Here, plaintiff initiated a new cause of action before this Court after the failed negotiations, and, as a result, engaging in an evidentiary hearing would be an inappropriate endeavor at this

8

summary judgment stage. Indeed, as the Seventh Circuit recently noted, "although the court has the discretion to receive oral testimony in connection with a motion for summary judgment under Rule 56, oral testimony should be rare. The use of oral testimony at the summary judgment stage creates a strong temptation for a judge to assess the witness's credibility, an impermissible role for a judge ruling on a summary-judgment motion." *Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1109 (7th Cir. 2014) (quotations omitted). As such, the parties must proceed with discovery and, when appropriate, a jury (as demanded by both parties) will be the ultimate trier of fact.

## IV. Conclusion

For the reasons stated above, both the plaintiff's motion for summary judgment [80] and the defendants' [75] motion for summary judgment are denied. The parties are directed to proceed with discovery. As previously agreed, written discovery shall be completed by 3/16/15 and oral discovery shall be completed by 4/28/15. Status hearing set for 3/25/15 at 9:00 a.m. At that time, the parties should report whether they are interested in scheduling another settlement conference with the Court. It is so ordered.

**ENTERED:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: January 30, 2015**